**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| HARRY A. PRITCHETT, | ) | |
| | ) | Case No. 1:09-cr-181; 1:14-cv-209 |
| *Petitioner,* | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent.* | ) | |

---

**MEMORANDUM OPINION**

---

Harry A. Pritchett ("Petitioner"), a federal prisoner, timely filed a *pro se* motion to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc.

1515]. In his 2255 Motion, he asserts for a multitude of reasons that he was denied effective

assistance of counsel at the trial and appellate levels. Petitioner also moves to amend his

original 2255 Motion to add an additional claim of ineffective assistance of counsel [Doc. 1605].

For the reasons stated herein, both motions will be **DENIED** because Petitioner's 2255 Motion

[Doc. 1515] lacks substantive merit, and his proposed amendment [Doc. 1605] is barred by the

applicable statute of limitations.

I.      **STANDARDS OF LAW**

        A.      **Threshold Standard**

        Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or

correct his judgment of conviction and sentence if he claims that: (1) the sentence was imposed

in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to

1

impose the sentence; or (3) the sentence imposed is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under Section 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). To obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a Section 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states "only bald legal conclusions with no supporting factual allegations.") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations

cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### B.     Procedural Default

Generally, a federal prisoner is procedurally barred from raising on collateral review a claim that he did not raise on direct appeal unless that claim is ineffective assistance of counsel under the Sixth Amendment. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). A procedurally defaulted claim may be considered on collateral review if the petitioner can show: (1) cause for failure to raise the claim on direct appeal; and (2) actual prejudice resulting from the alleged violation. *Bousely*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If the petitioner fails to show cause, then it is not necessary to consider whether petitioner suffered prejudice. *Bousely*, 523 U.S. at 623. Ineffective assistance of counsel is considered "cause" for failure to raise an issue on direct appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (200); *Ratcliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

If the petitioner is unable to show cause and prejudice, he may still be able to obtain review of his claims if his case fits within a narrow class of cases permitting review to prevent a fundamental miscarriage of justice, such as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *see also Peveler*, 269 F.3d at 698.

## C.      Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). Under this test, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong of the *Strickland* test requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because:

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound . . . strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test—prejudice.  Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry.  *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Id.*

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Facts Regarding the Investigation and Indictment of Petitioner

In 2007, several traffic stops in and around Marion County, Tennessee, resulted in the discovery and seizure of "ice" methamphetamine [Doc.  1476, 8/31/2011 Trial Tr. at Page ID ## 5661-62].  Based upon information gleaned from the traffic stops, law enforcement agents identified several prominent local sources of ice, including Petitioner, and developed confidential informants to conduct controlled buys from Petitioner at his residence on March 27 and 28, 2008 [*Id.* at 5663, 5667].  Agents thereafter obtained and executed a search warrant at Petitioner's residence on March 28, 2008, finding several firearms, numerous rounds of ammunition, marijuana, three sets of electronic scales, and various drug paraphernalia [*Id.* at 5664-93].  A second confidential informant participated in controlled buys of ice methamphetamine from

Petitioner on March 9 and 16, 2009 [*Id.* at 5694-98].

A federal grand jury charged Petitioner and numerous coconspirators with conspiracy to manufacture and distribute at least fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) (Count One); and conspiracy to possess listed chemicals, in violation of 21 U.S.C. §§ 846 and 841(c)(2) (Count Two).  Petitioner was additionally charged with manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts Three, Four, Six, Seven); possessing firearms as a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five); possessing methamphetamine laboratory equipment and chemicals, in violation of 21 U.S.C. § 843(a)(6) (Count Eight); and using and maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1) (Count Ten) [Doc. 976, Third Superseding Indictment].

When officers arrived at Petitioner's residence on January 7, 2010, to arrest him, Petitioner consented to a search of his residence [Doc. 1469, 8-15-2001 at Page ID # 4527; Doc. 1476, 8/31/2011 Trial Tr. at Page ID ## 5698-5702].  Agents found two sections of plastic tubing, propane canisters, aluminum foil, HEET fuel line antifreeze, organic iodine, a coffee pot containing a red substance, hydrogen peroxide, a mason jar containing a clear liquid, plastic baggies, coffee filters, an instant cold compress, a Ziploc bag containing a yellow substance and another containing a crystalline substance [Doc. 1469, 8/15/2011 Trial Tr. at Page ID ## 4527-47].  Four co-conspirators were also located at the residence [*Id.* at 4527; Doc. 1470, 8/16/2011 Trial Tr. at Page ID ## 4555-56].

**B.**    **Facts Regarding Petitioner's Trial**

Petitioner proceeded to trial in August 2011, along with co-defendants Eddie Rollins, Mike Coffelt, and Jessie H. Johnson; all of the other co-defendants had previously pleaded guilty [Doc. 1215, Courtroom Minutes].  After a fourteen-day trial, Petitioner was convicted as charged

[Doc. 1243, Verdict]. During trial, the United States presented the testimony of thirteen co-defendants: Stephen Baird, Anthony Caldwell, David Dempsey, Guadalupe Gaitan, Lacy James, Jesse A. Johnson, Ella King, Ralph Layne, Dana Morrison, Berry Nolan, Jamie Osborne, Bobby Rollins, and Jeffrey Smith [*See generally* Doc. 1470, 8/16/2011 Trial Tr.; Doc. 1472, 8/23/2011 Trial Tr.; Doc. 1473, 8/24/2011 Trial Tr.; Doc. 1474, 8/29/2011 Trial Tr.]. The co-defendants testified that they purchased methamphetamine from Petitioner, traveled with Petitioner to Georgia to obtain "Mexican ice" from his source, and/or gave boxes of pseudoephedrine to Petitioner in exchange for finished methamphetamine [*E.g.*, Doc. 1470, 8/16/2011 Trial Tr. at Page ID## 4637-39 (Ella King), 4700-18, 4745-46 (Gaitan), 4761-68 (Lacy James); Doc. 1472, 8/23/2011 Trial Tr. at Page ID ## 4869-77 (Anthony Caldwell), 4923-28 (Bobby Rollins), 5006-14 (Dana Morrison); Doc.1473, 8/24/2011 Trial Tr. at Page ID ## 5145-48, 5163 (Jeffrey Smith); Doc. 1474, 8/29/2011 Trial Tr. at Page ID ## 5317-20 (David Dempsey), 5261-66, 5269 (Jesse A. Johnson)].

In addition to the ice Petitioner obtained from Georgia, the conspiracy involved several methamphetamine "cooks," including Mike Coffelt, Eddie Rollins, Anthony Caldwell, David Dempsey, Stephen Baird, Berry Nolan, and Bobby Rollins [Doc. 1470, 8/16/2011 Trial Tr. at Page ID ## 4588-92, 4629, 4695, 4712-13, 4755-56; Doc. 1472, 8/23/2011 Trial Tr. at Page ID ## 4852-53, 4921-22, 5005-08; Doc. 1473, 8/24/2011 Trial Tr. at Page ID ## 5144-45, 5163; Doc. 1474, 8/29/2011 Trial Tr. at Page ID ## 5307-08, 5259]. A network of methamphetamine users supplied the "cooks" with pseudoephedrine and other precursor chemicals necessary for manufacturing methamphetamine, and, in exchange, the cooks would give some finished methamphetamine to the users [*Id.*]. The cooks sometimes worked together, and the users sometimes supplied pseudoephedrine and other chemicals to more than one "cook," resulting in

overlapping groups manufacturing methamphetamine [*Id.*].

Following the enactment of Meth-Free Tennessee Act, pseudoephedrine purchasers had to show photo identification and sign a written or electronic log [Doc. 1475, 8/30/2011 Trial Tr. at Page ID ## 5525-26]. The law also limited the quantity of pseudoephedrine any individual could purchase per month, and those purchases were electronically tracked by the Tennessee Methamphetamine Task Force [Doc. 1476, 8/31/2011 Trial Tr. at Page ID ## 5739-41]. Using pharmacy records generated pursuant to the Meth-Free Tennessee Act, the United States proved the quantities of pseudoephedrine purchased by various co-defendants [Doc. 1469, 8/15/2011 Trial Tr. at Page ID ## 4476-4525; Doc. 1477, 9/1/2011 Trial Tr. at Page ID ## 5765-66].

A summary of those total purchase numbers and aggregate pseudoephedrine amounts were admitted at trial as Government's Exhibits 189B, respectively [Doc. 1476, 8/31/2011 Trial Tr. at Page ID ## 5739-5742; Doc. 1477, 9/1/2011 Trial Tr. at Page ID ## 5570-74]. The evidence showed eight co-defendants made 507 trips to a pharmacy to purchase 1205.68 grams of pseudoephedrine to manufacture methamphetamine [Id.]. DEA Special Agent David Shelton testified that 100 grams of pseudoephedrine could produce a "conservative estimate" of 56 grams of actual methamphetamine [Doc. 1475, 8/30/2011, Trial Tr. at Page ID # 5535-36].

At trial, Agent Frizzell reviewed the evidence log and identified photographs taken during the January 7, 2010, search of Petitioner's residence [Doc. 1469, 8/15/2011 Trial Tr. at Page ID ## 4526-47]. Frizzell, who was assigned to the drug investigation division of the TBI, assisted in the arrest of Petitioner and subsequent search of his residence [*Id.* at Page ID ## 4526-27]. Frizzell testified that after receiving consent to conduct the search, "[t]eams broke up, we searched the residence, and found items and components used in manufacturing meth." [*Id.*] When asked what the officers did with the items seized, Frizzell responded, "[t]hey were

HAZMAT'd" because exposure to certain chemicals found in clandestine methamphetamine labs could be hazardous [*Id.* at 4528]. Frizzell then explained that the following items were identified as potential evidence, photographed, seized, and destroyed: coffee filters, plastic tubing, "a zip-lock baggie with an ice crystal-like substance," a coffee pot containing what appeared to be red phosphorous, a plastic bag of marijuana, propane bottles, a bottle of HEET fuel line anti-freeze, red phosphorus residue in the toilet and bathroom garbage can, a bag of organic iodine, a plastic bag with a funnel and tubing, a glass jar with an unknown liquid, a cold pack, and a bottle of peroxide [*Id.* at 4528-47].

During trial and in his 2255 Motion, Petitioner implied that he was unaware of any manufacturing or distribution of methamphetamine that may have occurred at his residence. When cross-examining Frizzell, Petitioner's trial counsel elicited testimony that the four individuals present at Petitioner's residence on January 7, 2010, who were arrested and charged with attempting to manufacture methamphetamine, all had access to the common area where various items used to manufacture methamphetamine were seized. [Doc. 1470, 8/16/2011Trial Tr. at Page ID ## 4555-56, 4562-71].

Co-defendant Guadalupe Gaitan testified that he was living at Petitioner's house when the police arrived to arrest Petitioner and conducted the search [Doc.1470, 8/16/2011 Trial Tr. at Page ID ## 4697]. Gaitan initially purchased ice methamphetamine and "old school" locally-manufactured methamphetamine from Petitioner and then saw methamphetamine being manufactured there [*Id.* at 4700, 4706-07]. Gaitan became involved in the manufacture of methamphetamine with his girlfriend Wanda, and then with co-defendants Aaron Sullivan, Jeffrey Smith, and Rollins [*Id.* at 4712-17]. Gaitan described one occasion where he and Rollins had manufactured methamphetamine at Petitioner's house and Petitioner had provided muriatic

acid; in return, they gave Petitioner some finished methamphetamine to repay him for the acid and for the use of his house [*Id.* at 4716-18]. Additionally, Petitioner personally helped Gaitan "break down" iodine, strip matches, and provided pseudoephedrine pills for Gaitan to take to his girlfriend to manufacture methamphetamine [*Id.* at 4710-11]. Gaitan testified that, on the same day that agents searched the residence, he and Smith and Sullivan were preparing to manufacture methamphetamine at Petitioner's house; Smith had left to obtain the necessary precursors [*Id.* at 4712-14].

Smith corroborated Gaitan's testimony, testifying that, when he was arrested on January 7, 2010, he was in the process of collecting chemicals to manufacture methamphetamine with Gaitan and Sullivan at Petitioner's house [Doc. 1473, 8/24/2011 Trial Tr. at Page ID ## 5145-46]. He testified that he had participated in the manufacture of methamphetamine with Gaitan and Sullivan at Petitioner's residence on three occasions—twice in the backyard and once in the bathroom [*Id.* at 5147, 5162-63].

Co-defendants Ella King, Lacy James, and Jamie Osborne also testified that they had each been to Petitioner's residence to purchase methamphetamine [Doc. 1470, 8/16/11 Trial Tr. at Page ID ## 4673-79, 4761; Doc. 1472, 8/23/2011 Trial Tr. at Page ID ## 5053-55]. James and Osborne testified that Petitioner "fronted" 8-balls of methamphetamine to them to resell [Doc. 1470, 8/16/2011 Trial Tr. at Page ID ## 4762-65; Doc. 1472, 8/23/2011 Trial Tr. at Page ID ## 5055-58]. James lived at Petitioner's house for a couple of weeks, used methamphetamine there with him, and saw numerous people there, including Rollins and co-defendant Jessie Johnson [Doc. 1470, 8/16/11 Trial Tr. at Page ID ## 4766, 4768, 4772].

Co-defendants Baird, Caldwell, and Dempsey each described how they manufactured methamphetamine, including the chemicals and equipment they used, how they obtained their

materials, the various processes involved, and what their typical yields were [Doc. 1470, 8/16/2011 Trial Tr. at Page ID ## 4584, 4590-92; Doc. 1472, 8/23/2011 Trial Tr. at Page ID ## 4855-4866; Doc. 1474 8/29/2011 Trial Tr. at Page ID ## 5310-14]. Baird used the "shake-n-bake" method, while Caldwell and Dempsey preferred the red-phosphorous method [Doc. 1470, 8/16/2011 Trial Tr. at Page ID # 4584; Doc. 1472, 8/23/2011 Trial Tr. at Page ID ## 4858-59; Doc. 1474, 8/29/2011 Trial Tr. at Page ID # 5310].

DEA Special Agent David Shelton testified as an expert on the manufacture, distribution, and use of methamphetamine [Doc. 1475, 8/30/2011 Trial Tr. at Page ID ## 5514-37]. Shelton distinguished between "ice" methamphetamine imported from Mexico and locally-manufactured ephedrine-reduction methamphetamine, explaining how loosely-knit groups typically gathered pseudoephedrine and other precursor chemicals [*Id.* at 5516-27]. Shelton also described the various methods used to manufacture methamphetamine (including the red phosphorous, "shake-n-bake," and anhydrous ammonia methods) and the typical yields, the street value of the drug, as well as the unique culture surrounding its use and manufacture [*Id.* at 5519-21, 5524-27, 5530-31, 5534-35]. Shelton testified about the use of confidential informants and the relative frequency of suspects involved in methamphetamine confessing to law enforcement [*Id.* at 5527-30; 5535-36].

C.    **Facts Regarding Petitioner's Sentence**

In calculating Petitioner's advisory Guidelines range, the probation officer began with a base offense level of 32 for the grouped drug convictions, based upon a minimum of 50 grams of methamphetamine (actual) as found by the jury [Presentence Report ("PSR") ¶ 35]. An additional two levels were added for possession of firearms in connection with methamphetamine distribution and manufacture at Petitioner's residence [*Id.* ¶ 36]. Petitioner

11

received an additional two levels for obstruction of justice related to Petitioner's circulation of affidavits to co-defendants in an attempt to exonerate himself, resulting in adjusted offense level of 36 [*Id.* ¶ 41]. Given his criminal history category of I, the resulting Guidelines range was 188 to 235 months' imprisonment, restricted by a 240-month mandatory minimum because Petitioner had a prior felony drug trafficking conviction, regarding which the United States had timely filed notice [*Id.* ¶ 60]. Petitioner did not object to the PSR. His attorney stated that he "didn't want to reopen the report for the possibility of any additional relevant conduct coming in that could increase his guidelines," and that "[felt] like [he] needed to protect [Petitioner] from himself" [Doc. 1484, 7/31/12 Sentencing Tr. at Page ID # 6536]. Counsel recalled that, after they discussed the PSR, Petitioner indicated that he did not want counsel to represent him at sentencing [*Id.*]. The Court explained to Petitioner that the enhancements in the Guidelines calculations were merely "academic" because they did not affect his effective Guidelines range. [*Id.* at 6538]. The Court then confirmed that Petitioner had been given sufficient time to discuss the report with counsel [*Id.* at 6540]. In the meantime, Petitioner gave counsel "the green light" to continue representing him [*Id.*]. Petitioner was ultimately sentenced to the statutory mandatory minimum of imprisonment of 240 months [Doc. 1335, Judgment].

### D. Facts Regarding Petitioner's Appeal and § 2255 Motion

Petitioner filed a direct appeal challenging the Court's supplemental jury instruction regarding Count Two, the omission of a dual-role instruction as to TBI Agent Heath Frizzell, and the propriety of the statutory sentencing enhancement. *United States v. Pritchett*, 749 F.3d 417, 428-30, 434 (6th Cir. 2014). The Sixth Circuit Court of Appeals rejected each of Petitioner's arguments and affirmed his convictions and sentence in a decision issued on April 9, 2014. *Id.*

Petitioner timely filed the instant 2255 Motion on July 7, 2014 [Doc. 1515, 2255 Motion;

Doc. 1516, 2255 Memorandum in Support; Doc. 1517, Affidavit]. The United States responded

pursuant to this Court's order [Doc. 1524, Order]. On December 3, 2015, more than one year

after Petitioner's underlying judgment became final, Petitioner filed a motion to amend his 2255

Motion to add another claim of ineffective assistance of counsel. Petitioner alleges Attorney

Tidwell was ineffective because he failed to inform him that the government intended to use a

prior conviction to enhance his statutorily mandated minimum sentence and failed to challenge

the alleged wrongful application of that enhancement to his sentence [Doc. 1605, Motion to

Amend].

## III.    ARGUMENT

### A.    Alleged Ineffective Assistance of Trial Counsel

Petitioner alleges that counsel was constitutionally ineffective in eight ways, but his

claims are all interrelated [Doc. 1515, 2255 Motion; Doc. 1516, 2255 Memorandum]. As an

initial matter, a petitioner must set forth adequate facts which entitle him to relief. *See, e.g.,*

*O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by

allegations of fact with some probability of verity, are not sufficient to warrant a hearing.").[1]

Here, Petitioner offers accusations without sufficient factual development or legal support, and

his motion could be dismissed on that basis alone.

Petitioner complains about his representation at trial and sentencing by Attorney Gerald

Tidwell and on appeal by Attorney Michael Stengel [*See generally*, Doc. 1515, 2255 Motion;

Doc. 1516, 2255 Memorandum]. His six enumerated complaints regarding Attorney Tidwell all

relate to purported deficiencies in trial strategy and preparation. Petitioner alleges that Attorney

---

[1] *See also Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam) (explaining that where "claims are stated in the form of conclusions without any allegations of facts in support thereof as well as being unsupported by proof or reference to such proof," a 2255 motion is "legally insufficient to sustain review").

Tidwell failed to investigate the case, to file unspecified pre-trial and post-trial motions, to make evidentiary objections during trial, to call defense witnesses, and to allow Petitioner to testify. Petitioner further asserts trial counsel failed to seek a mistrial [Doc. 1516, 2255 Memorandum at 9-14, Page ID # # 6784-89].

Petitioner also faults Attorney Tidwell for allegedly failing to supply discovery to Petitioner or obtain exculpatory evidence as directed by Petitioner, and by "never interview[ing] a single witness or obtain[ing] any evidence that could have been used at trial" [Doc. 1515, 2255 Memorandum at 9, Page ID # 6784]. However, in his affidavit, Petitioner acknowledges that Attorney Tidwell interviewed all thirteen of the potential witnesses whose names Petitioner had provided. [Doc. 1517, Affidavit at ¶¶ 2, 5, Page ID # 6792].

Petitioner also claims that counsel failed to obtain state court transcripts regarding guilty pleas by Guadelupe Gaitan and "Aaron Sutherland" for manufacturing methamphetamine at Petitioner's residence, but Petitioner fails to explain how such information could have exculpated him [*Id.* ¶ 6]. Gaitan and Sullivan were co-defendants in this case who pleaded guilty and admitted cooking methamphetamine with each other and additional co-defendants inside Petitioner's residence. As referenced above, Gaitan testified at trial that he was living at Petitioner's house at the time Petitioner was arrested, was cooking methamphetamine with co-defendants Aaron Sullivan and Jeffrey Smith that day, and that Petitioner had helped Gaitan on previous occasions and had sold Gaitan finished methamphetamine [Doc. 1470, 8/16/2011 Trial Tr. at Page ID ## 4697, 4700, 4706-07, 4712-18]. Co-defendant Smith similarly testified that he had participated in the manufacture of methamphetamine with Gaitan and Sullivan at Petitioner's residence on three occasions [Doc. 1473, 8/24/2011 Trial Tr. at Page ID ## 5147, 5162-63].

To the extent that Petitioner claims that Gaitan and Sutherland could have exculpated

him, the record shows that both would have incriminated Petitioner, presuming that Aaron Sutherland is actually Aaron Sullivan. And, defense counsel has no obligation to call—or even interview—a witness whose testimony would not have exculpated the defendant. *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). "To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Carter v. Mitchell*, 829 F.3d 455, 473 (6th Cir. 2016). Petitioner has not overcome this presumption.

Petitioner next faults Attorney Tidwell for failing to file a motion to suppress evidence seized from "property owned but not occupied by Petitioner" [Doc. 1516, 2255 Memorandum at 9, Page ID # 6784]. Petitioner appears to suggest that, because he was allegedly not living in his residence at the time of the search, counsel should have challenged the legality of the search on that basis [Doc. 1516, 2255 Memorandum at 9-10, Page ID ## 6784-89]. Additionally, Petitioner claims that "the evidence uncovered from the stop would have been inadmissible" and that "[w]ithout the evidence from the stop, there is a substantial probability that Petitioner would not have been convicted" [Doc. 1516, 2255 Memorandum at 8, Page ID # 6783]. There was no traffic stop involving Petitioner. Petitioner was present when officer arrived at his house and he orally granted consent for them to search his house. Petitioner has thus identified no basis upon which counsel could have mounted any non-frivolous Fourth Amendment challenge.

In his affidavit, Petitioner also complains that counsel failed to seek severance from his co-defendants, despite Petitioner's alleged instructions for counsel to do so [Doc. 1517, Affidavit ¶ 7, Page ID # 6793]. Yet, Petitioner provides no legitimate basis upon which counsel could have filed such a motion. "As a general rule, persons jointly indicted should be tried together." *United States v. Causey,* 834 F.2d 1277, 1287 (6th Cir. 1987); *accord Zafiro v. United States,*

506 U.S. 534 (1993). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539. "Risk of simple prejudice is insufficient to sever the trials of co-defendants; the prejudice must be compelling, specific, and actual, or substantial or undue." *United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011) (internal quotation marks and citations omitted). Petitioner has identified no potential prejudice rising to the level requiring severance. Thus, Petitioner's counsel was not ineffective for failing to file a meritless motion for severance.

Petitioner also contends that Attorney Tidwell was ineffective in failing to "interpose any objections to witnesses [*sic*] testimony that was not properly admissible" at trial [Doc. 1516, § 2255 Memorandum at 10, Page ID # 6785]. In Petitioner's view, counsel committed "a classic blunder" and "elicited testimony that [James] was involved in distribution of drugs with [Petitioner] in 2006 . . . a time period not charged in the indictment nor part of the alleged conspiracy" [*Id*.]. In support, Petitioner cites page 472 of the transcript, and, although Attorney Tidwell's cross-examination of James does begin on that page, there is nothing related to either the year 2006 or her involvement with Petitioner [Doc. 1470, 8/16/2011 Trial at Page ID # 4802]. On direct examination, James had testified that she first met Petitioner toward the end of 2006 and, along with co-defendant Jamie Osborne, began getting ice methamphetamine from him [*Id.* at Page ID # 4762]. On cross-examination, Attorney Tidwell questioned James at length about her extensive history with drug abuse and how it might have affected her memory going back to 2006 [*Id.* at 4804-16]. Contrary to Petitioner's contention, Attorney Tidwell did nothing to elicit damaging testimony from James, and, in fact, called into question the reliability of her memory due to her drug use. Petitioner also fails to identify any specific

evidentiary error to which Attorney Tidwell should have objected.

Petitioner next faults Attorney Tidwell for not seeking a mistrial after informant Paul Knight testified about seeing Petitioner with firearms during the investigation of the case [Doc. 1516, 2255 Memorandum at 11, Page ID # 6786]. Petitioner complains that the evidence was "highly prejudicial and gravely misleading," but fails to show how it was improper [*Id.* at 10, Page ID # 6785]. Instead, he quotes Knight's testimony from the transcript, which indicates that Knight had seen Petitioner shoot firearms during the period charged in the indictment [*Id.* at 10-11, 6785-86]. Petitioner's dislike of particular evidence, however, does not make it improper. Petitioner was charged with possessing firearms as a felon in violation of 18 U.S.C. § 922(g)(1). Certainly testimony regarding his possession and firing of firearms was germane to that charge.

Petitioner next asserts Attorney Tidwell should have moved for a mistrial on the ground that testifying co-defendants were allegedly "discussing the details of their testimony," and had supposedly concocted a plan to "send [Petitioner] over the mountain by coordinating . . . false facts." [Doc. 1516, 2255 Memorandum at 12, Page ID # 6787]. Federal Rule of Evidence 615 requires a court to "order witnesses excluded [from the courtroom] so that they may not hear other witnesses' testimony" on request by a party. An express violation of a sequestration order does not automatically bar testimony of the witness. *United States v. Gibson*, 675 F.2d 825, 835-36 (6th Cir. 1982); *United States v. Martin*, 516 Fed. App'x 433, 448 (6th Cir. 2013). Exclusion of a witness is justified when a party has procured or consented to the violation of the order. *Id.* Petitioner has presented no evidence to believe that the government in any way procured or consented to the conduct alleged by Petitioner.

Petitioner also contends Attorney Tidwell was ineffective because he did not "file any

post-trial motions." Petitioner does not specify what post-trial motions his counsel should have filed except that he asserts "the Court erred in providing a number of jury instructions with the issue of whether the government could provide charges in the alternative" [Doc. 1516, 2255 Memorandum at 13, Page ID # 6788]. To the extent Petitioner is challenging the Court's supplemental instruction regarding proof in the disjunctive, that claim was rejected by the Sixth Circuit on appeal and may not be relitigated on collateral review, absent highly exceptional circumstances or intervening law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Hillis v. United States*, Case Nos. 16-2073/2101, 2017 WL 3221278, at 2 (6th Cir. Feb. 10, 2017). Neither situation is present here.

Petitioner also criticizes Attorney Tidwell for not submitting a "theory of defense instruction" and not objecting to the Court's issuance of an *Allen* instruction [Doc. 1516, 2255 Motion at 13, Page ID # 6788]. Petitioner fails to explain what defense theory instruction should have been presented or why the Court's *Allen* instruction was in error. The lack of factual or legal development for his claims is fatal.

Petitioner next faults Attorney Tidwell for not calling Joann Lane, Troy Lane, Ricky Carr, and Ricky Cooley as defense witnesses at trial, to testify that Petitioner was not living full-time at his residence when methamphetamine cooks occurred there [Doc. 1516, 2255 Memorandum at 13, Page ID # 6788; *see also* Doc. 1517, Affidavit ¶ 2, Page ID # 6792]. Petitioner fails to mention that counsel did present eight defense witnesses on Petitioner's behalf [*See generally* Doc. 1478, 9/2/2011 Trial Tr.] One of the witnesses whom Petitioner now claims counsel should have called—Petitioner's girlfriend, (Teresa) Joann Lane, had distributed false affidavits to two co-defendants before trial on Petitioner's behalf, in an attempt to exculpate Petitioner [PSR ¶ 28]. Calling her as a witness would have presented serious

complications for Petitioner's defense, because the United States would have been able to impeach her by introducing evidence that she and Petitioner attempted to suborn perjury. Petitioner nonetheless argues many of these witnesses could have testified he was not living at the residence where methamphetamine was being manufactured, though Petitioner does admit that he was a co-owner of this residence. Petitioner cannot show that he was prejudiced by a failure to call these witnesses. Petitioner did not have to live at the residence to be involved in the manufacture of methamphetamine at the residence, and there was ample testimony to this effect which the jury apparently found credible.

Petitioner also alleges Attorney Tidwell was not effective as defined by the Sixth Amendment because he did not allow Petitioner to testify on his own behalf. A defendant has a fundamental right to testify on his own behalf. *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). This right is subject to knowing and intelligent waiver which is presumed unless a defendant alerts the trial court of his desire to testify. *Id.* at 640. "[T]he trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Id.*

The court in *United States v. West*, Case No. 12-01-ART-(2), 2014 WL 4693703, at 12 (E.D. KY Sept. 22, 2014) addressed circumstances very similar to the instant case. In *West*, the § 2255 petitioner alleged he was denied ineffective assistance of counsel because his attorney refused to let him testify at trial. The *West* court noted petitioner did not affirmatively assert that he was unaware of his right to testify or that he was prevented from seeking the court's help in exercising his right to testify. *Id.* (quoting *Hodge*, 579 F.3d at 639). The *West* court further noted the petitioner presented no evidence from the trial record that he had somehow

alerted the trial court to his desire to testify. *Id.* Absent such a showing, the *West* court concluded there was a "strong presumption" that trial counsel had complied with professional conduct and had left the final decision of whether to testify to the client. *Id.* Consequently, the *West* court found the petitioner's claim failed. *Id.*

Similarly, Petitioner in this case has not alleged that he was unaware during his trial of his right to testify or that he had been barred from seeking the court's assistance in testifying. Nor has he presented any evidence from the record that he alerted the trial court to his desire to testify. Accordingly, the presumption that Petitioner's counsel complied with professional conduct remains intact.

### B.    Ineffective Assistance of Appellate Counsel

Finally, Petitioner contends that appellate counsel, Attorney Michael Stengel, was ineffective for not personally meeting with Petitioner and for not following his instructions as to which issues should be presented on appeal. [Doc. 1516, 2255 Memorandum at 14]. The Sixth Amendment, however, does not guarantee a meaningful relationship between the accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983), *Soler-Norona*, Case No. 13-14343, 2014 WL 3689644 (E.D. Mich. July 23, 2014). In *Kerkman v. United States*, Case No. 97-1786, 1998 WL 786964, at *2 (6th Cir. Oct. 29, 1996), the Sixth Circuit held that trial counsel's failure to meet with his client face-to-face until the morning of trial did not constitute ineffective assistance of counsel where counsel and client had communicated regularly through letters and phone calls thereby giving them opportunities to discuss the case.

In this case, the record is unclear whether Petitioner had any communication with appellate counsel beyond Petitioner's initial letter to counsel stating he wanted to work with counsel in presenting his appeal. Petitioner does not allege he had no form of communication

whatsoever with appellate counsel.  However, even if he had no other communication with his appellate counsel, the Court finds he did not suffer prejudice in the appeal presented by his appellate counsel.

> Petitioner asserts his appellate counsel should have presented the following issues:
>
> He failed to raise any issue about the fact that the government presented no evidence of Petitioner's involvement in the manufacturing of methamphetamine. Petitioner directed him to argue to the Appellate Court that the Government was wrong in presenting evidence that he shot an automatic weapon in the air and said, "that's what happens to snitches."  Petitioner also requested in the brief that the Court erred in not excluding testimony about a 9mm automatic weapon and a bazooka.  In the appeal Petitioner wanted Mr. Stengel to raise the issue that 5 witnesses had violated the witness sequestration order and discussed each other's testimony so that the defendant would be found guilty by the jury.

[Doc. 1516, 225 Memorandum at 14, Page ID # 6789].  First, as previously discussed, the government did present significant evidence of Petitioner's involvement in manufacturing methamphetamine.  Second, Petitioner was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); consequently, the introduction of evidence that Petitioner possessed and used firearms was highly relevant to this charge.  Petitioner has presented no reason why it was error to permit introduction of this evidence.  Third, for the reasons already discussed,  Petitioner would not have prevailed on the "witness sequestration issue."

 An attorney is not obliged to raise every non-frivolous argument urged by the appellant. *Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985); *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).  "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986).  The petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present. *Smith v. Robbins*, 528 U.S. 259, 289 (2000); *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003).

Petitioner has not made and cannot make that showing here, and his allegations of
ineffectiveness by appellate counsel fail.

> **C.**      **Motion to Amend 2255 Motion to Add Claim of Ineffective Assistance of
> Counsel at Sentencing**

Petitioner seeks to amend his 2255 Motion to add another claim for ineffective assistance
of trial counsel. In this claim, Petitioner asserts he was not notified by trial counsel that the
government intended to use a previous felony drug conviction to enhance his sentence from a
mandatory minimum term of imprisonment of ten years to a mandatory minimum term of
imprisonment of 20 years under 21 U.S.C. § 841(b)(1). He also asserts that trial counsel should
have challenged the enhancement because, as noted by the probation officer in the PSR, [see
PSR ¶ 59], the felonious charges for sale of a Schedule II drug were dismissed. Petitioner
appears to be arguing that if his trial counsel had informed him that the government was
attempting to enhance his sentence, he could have successfully opposed that enhancement.

A motion to amend or supplement a § 2255 motion will be denied where it is filed after
the one year limitation period expires unless the proposed amendment relates back to the date of
the original pleading within the meaning of Federal Rule of Civil Procedure 15(c)(2). *Howard v.
United States*, 533 F.3d 472, 457-76 (6th Cir. 2008); *see also*, 28 U.S.C. § 2255(f) (a one year
limitations period applies to a motion filed under 28 U.S.C. § 2255). Rule 15 states that an
amendment may "relate back" to the date of the original pleading if the proposed claim "arose
out of the conduct, transaction, or occurrence" set forth in the original pleading. Fed. R. Civ. P.
15(c)(2). In the context of habeas proceedings, the Supreme Court has interpreted that to mean
that the new claims must be based on the "same core facts" relied upon in a timely-filed petition;
a late-filed claim is unreviewable if it turns upon "events separate in 'both time and type' from

the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 657 (2004). Without the requirement of a "common core of operative facts," the "limitation period would have slim significance." *Id*. at 662. It is insufficient if the new claim merely arises from the same trial, conviction, or sentence. In such an instance, the new claim is time-barred. *Id.*; *see also Wiedbrauk v. Lavigne*, 174 F. App'x 993, 1001-02 (6th Cir. 2006) (holding that several claims in a motion to amend were time-barred and unreviewable because they did not "share a factual basis with any of the [timely-filed] claims.")

The Court of Appeals of the Sixth Circuit issued its decision denying Petitioner's direct appeal on April 9, 2014 [Doc. 1496]. The one-year statute of limitation period for Petitioner's 2255 Motion began to run 90 days after entry of the Court of Appeals' decision issued on April 9, 2014. *Clay v. United States*, 537 U.S. 522, 532 (2003). The one-year limitation period expired on July 8, 2015, and Petitioner did not file his motion to amend his 2255 Motion until December 3, 2015. Thus, this proposed claim relating to Petitioner's sentence enhancement is time barred unless it relates back to the original 2255 Motion. This claim, however, does not share any core operative facts with the other claims raised by Petitioner in his original 2255 Motion. Accordingly, the proposed amendment is not timely made because it does not relate back to the original 2255 Motion.

Additionally, Petitioner challenged the enhancement of his sentence on direct appeal and is therefore procedurally barred from challenging this enhancement again on collateral review. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (a 2255 motion may not be used to re-litigate an issue that was raised and considered on direct appeal absent highly unusual circumstances, such as intervening law).

Finally, the Court finds this claim is without merit. While the charges of felonious sale of a Schedule II drug were indeed dropped, Petitioner was convicted in state court in 2003 of felonious possession of Schedule II drugs [PSR ¶ 59]. Petitioner admitted to the Court during sentencing that this conviction was correct [Doc. 1484, Sent. Tr., Page ID # 6618]. Petitioner argues that this 2003 conviction was for possession of 3.5 grams of methamphetamine and was a first time offense. Therefore, argues Petitioner, his conviction was a misdemeanor, not a felony, under Tenn. Code Ann. § 39-17-417 [Doc. 1640, Petitioner's Brief at 3, Page ID # 7527]. Among other conduct, Tenn. Code Ann. § 39-17-417 prohibits possession of a controlled substance "with intent to manufacture, deliver or sell such controlled substance." All violations of Tenn. Code Ann. § 39-17-417 are felonies; however, first time offenders involved with anabolic steroids may, in certain circumstances, seek pretrial diversion. Tenn. Code Ann. § 39-17-417(d)(2)(A) (2003). A review of Tenn. Code Ann. § 39-17-417 in effect in 2002 and 2003 reveals no special provision for a first time offender in possession of methamphetamine which would render the conviction a misdemeanor instead of a felony. Consequently, the Court concludes that not only is this proposed claim time-barred, it lacks substantive merit.

IV.     **CONCLUSION**

Petitioner has moved to amend his 2255 Motion [Doc. 1605]. For the reasons stated herein, this motion is time barred and will therefore be **DENIED**. The Court has also reviewed Petitioner's original 2255 Motion and finds no merit in Petitioner's claims. For the reasons stated herein, the Court finds an evidentiary hearing is not necessary for this motion brought pursuant to 28 U.S.C. § 2255. The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief. The 2255 Motion [Doc. 1515] will therefore be **DENIED**.

**APPROPRIATE ORDER WILL ENTER**.

/s/ *Travis R. McDonough*

**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**